## EXTRAVAGANT REPRESENTATIONS AS TO THE MERITS OF AN ICE CREAM FREEZER.

Circuit Court of Cuyahoga County.

H. B. PUMPHREY v. C. H. HAFFNER, MAGGIE A. HAFFNER AND FRANCES H. PALMER.

Decided, May 15, 1911.

*Sale of Patent Rights—Covenant as to Ownership—Made Good by Repurchase of Outstanding Interest—Applications for Patent a "Patent Right"—Immaterial and Material False Representations.*

1. It is immaterial if one contract to sell a one-half interest in certain dies and patent rights, covenanting that he is the sole owner of all interests therein, whereas in fact he had previously sold a one-half interest, provided that he obtains a reconveyance thereof at or about the time he makes such covenant.

2. One who has applied for a patent upon an invention of which he is the owner, while his application is pending and before it is issued may declare that he is the owner of "patent rights" and sell an interest therein.

3. Representations that an ice cream freezer is the best ever; that whoever saw it would want it; that hardware dealers would take it as soon as they saw it; that his price for a half interest in the invention would be much higher to any one else than the plaintiff, but that owing to the plaintiff's especial adaptability to exploit an ice cream freezer, he would let him in cheap, etc., made in order to induce the plaintiff to purchase an interest in the invention, and upon which he acts, are a kind of bragging and flattery, but though false, do not constitute that kind of fraud which is recognized by the law.

4. Representations that an ice cream freezer is selling well; that it is giving excellent satisfaction and is doing the work intended in a perfectly satisfactory manner are material and if relied upon in purchasing an interest in the invention, and turn out false, will give ground for setting aside the sale.

*D. M. Bader,* for plaintiff.
*H. A. Tilden,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

H. B. Pumphrey prays to have a deed of conveyance of certain real estate, made by him to Maggie A. Haffner, who is the wife

of C. H. Haffner, set aside; also to have a deed of a part of the same real estate made by C. H. Haffner and Maggie A. Haffner to Frances H. Palmer set aside.

Without going into the reasons why, it is agreed that both of these deeds should be set aside, if the contract made between Pumphrey and C. H. Haffner, under which the deed to Maggie A. Haffner was made, would not support the deed last named if it had been made to C. H. Haffner instead of to Maggie A. Haffner.

The plaintiff says this contract was tainted with fraud perpetrated on him by C. H. Haffner.

This contract was made May 24th, 1910. If there was fraud on the part of Haffner in the transaction, it was in reference to certain representations made by him to Pumphrey in regard to certain rights in a patent on ice cream freezers. In a writing given to Pumphrey by Haffner on the day last named, Haffner declared that he was the sole owner of all interests in certain dies and patent rights in the "Reams-Haffner Instantaneous Freezer," and one-half interest in these patent rights and dies was what he gave to Pumphrey for the real estate in question.

The evidence shows that, before the date of this contract, Haffner had sold a half interest in this same thing to a certain corporation, with which he was connected, and on the part of Pumphrey, the evidence tends to show that this title was outstanding at the date of the contract with Pumphrey. On the part of Haffner, it was asked that the case be delayed for evidence which it was said could and would be produced, that the interest which this corporation had received from Haffner had been transferred back to him before the 24th day of May, 1910. It was conceded by the plaintiff that such reconveyance was made at some time, either before or after May 24th, 1910, and holding that it would in no wise matter to Pumphrey whether such reconveyance was made before or after the date named, we did not wait for the evidence, but hold that Pumphrey would not be entitled to relief simply because of this transaction with the corporation, so long as Haffner got the title in, and so made good the title in Pumphrey.

As a matter of fact, no letters patent have ever been issued on the device spoken of, but application for such patent had been made, and this application was pending in the patent office at the time of the contract, and such application was owned by Haffner, so that he had certain rights in the patent, which may be called "patent rights" even without letters patent having been issued.

The evidence is not clear as to whether Pumphrey knew exactly the situation of the patent in the patent office or not, when the contract was made. If he did not, he learned shortly after the date of the contract, and did not seek then to avoid the contract on that account. Many representations are charged by Pumphrey to have been made by Haffner, which, whether strictly true or not, would not avoid the contract. Haffner said, in effect, that the freezer was the best ever, that whoever saw it would want it, that hardware dealers would take it as soon as they saw it, and that to any other man than Pumphrey his price for the half interest would be $10,000 but that owing to his especial adaptability to exploit an ice cream freezer, he would let him in cheap, etc.

This kind of bragging and flattery does not constitute the kind of fraud recognized by the law. These representations only purported to be Haffner's opinions as to the great value of the invention, and very likely may have been entertained by him. Many an enthusiastic inventor has entertained such opinions relative to his invention, only to have them shattered by the indifference with which his device was received by the public, or by its utter rejection.

But the evidence does show that Haffner made statements to Pumphrey which the existing facts did not warrant, which were material and were relied upon by Pumphrey. He told him the machines were selling well; that they were giving excellent satisfaction, and were doing the work intended in a perfectly satisfactory manner.

The fact was, that the machines sold up to that time, as well as since, were wholly unsatisfactory, and had failed to show that there was any value in the patent, either as it then was, inchoate, or as it might become, if letters were issued. Haffner substantial-

ly admits that the machines had not done good work, but says it was because of faulty construction. Possibly the whole difficulty was on account of faulty construction, but the difficulty is that Haffner represented to Pumphrey that the machine already sold demonstrated the value of the invention, and on this Pumphrey relied. Haffner so far overstated the fact as to constitute a fraud, by reason of which the plaintiff is entitled to a decree setting aside the deeds, as prayed for, and such decree will be entered.